**Kenneth D. WOODWARD and wife Patricia Louise Woodward, Plaintiffs,**

v.

**The CITY OF PARIS, TENNESSEE, Defendant.**

No. 06–1170 An.

United States District Court, W.D. Tennessee, Eastern Division.

Oct. 24, 2007.

---

Richard L. Dunlap, III, The Dunlap Law Firm, Paris, TN, Steven L. West, West & West, McKenzie, TN, Plaintiffs.

Dale Conder, Jr., Rainey Kizer Reviere & Bell, Jackson, TN, for Defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

S. THOMAS ANDERSON, United States Magistrate Judge.

Before the Court is Defendant's Motion for Summary Judgment filed on November 3, 2006. (D.E.# 7.) Plaintiffs responded in opposition on November 28, 2006. (D.E.# 9.) For the reasons set forth below, the Motion is **GRANTED**.

### BACKGROUND

Plaintiffs Kenneth and Patricia Woodward ("Plaintiffs") brought this action against the City of Paris, Tennessee ("City"), under the Americans with Disabilities Act ("ADA") alleging that the City violated the ADA by refusing to grant Plaintiffs a variance for construction of a carport. According to Plaintiffs, Mrs. Woodward has Multiple Sclerosis and is confined to a motorized chair. Mr. Woodward originally sought a building permit from the City of Paris to construct a storage building for his motor home. Mr. Woodward informed the City Building Inspector that he wished to construct a storage building in his back yard to store the motor home and a carport on the side of his house in order to allow Mrs. Woodward to get in and out of the motor home and her van without getting wet, should it be raining. Plaintiffs allege that the City Building Inspector told them to mark the proposed use on the permit application as "garage" and suggested to them that building the carport would be permitted so long as it did not extend to within one foot from Plaintiffs property line. Based on that conversation, and believing that the building permit they had obtained covered both the storage building and the carport, Plaintiffs began building the carport on the side of their house that extended within one foot of their property line. The city zoning regulations, however, require a fifteen foot side yard. Plaintiffs petitioned the City for a variance to the zoning requirements to build the carport, but the city denied the variance request.

Plaintiffs sued the City, seeking a mandatory injunction requiring the City to grant the Plaintiffs' variance request, civil penalties, and attorney's fees. Plaintiffs contend that the City violated the ADA in failing to grant the Plaintiffs' a variance. Specifically, Plaintiffs allege that City discriminated against them based on a disability in failing to grant the variance because Mrs. Woodward has Multiple Sclerosis.

### SUMMARY JUDGMENT STANDARD

When jurisdiction of a federal civil action is based upon a federal question, the summary judgement standard to be applied is that found in Federal Rule of Civil Procedure 56.[1] Under Rule 56(c), summary judgment is proper when there is no genuine issue of material fact "and the moving party is entitled to judgment as a matter of law."[2] When determining if summary judgment is appropriate, the court should ask "whether the evidence

---

1. *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 166 (6th Cir.1993); *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 459 (6th Cir.1986).

2. Fed.R.Civ.P. 56(c); see also *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

presents a sufficient disagreement to require submission to a jury or whether it is so one-side that one party must prevail as a matter of law."[3] In making that determination, the court must view the evidence in the light most favorable to the nonmoving party.[4]

## ANALYSIS

■ The Americans with Disabilities Act ("ADA") provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."[5] A "public entity" includes all departments, agencies, and instrumentalities of state or local government.[6] Included within the definition of "programs, services, or activities," are a city's zoning decisions.[7] Furthermore, the ADA defines a "qualified individual with a disability" as one who, with or without modifications, "meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity."[8]

### A. Prima Facie ADA Claim

■ To establish a prima facie case under the ADA, which prohibits discrimination in public services, "a plaintiff must show that he or she: (1) has a disability, (2) is otherwise qualified, and (3) 'is being excluded from participation in, being denied the benefits of, or being subjected to discrimination under the program solely because of [his or] her disability.' "[9] In this matter, the City seeks summary judgment because it claims Plaintiffs are unable to prove an element essential to their case. Specifically, the City claims that Plaintiffs have failed to establish any facts sufficient to show that the City discriminated against them solely because of Mrs. Woodward's disability. To support this contention, the Defendant has provided the affidavit of Ida Thornton, Building Inspector for the City of Paris. Ms. Thornton states that she informed Mr. Woodward that he could not build the carport because it would encroach on the fifteen foot side yard required by the city zoning ordinance. Additionally, Ms. Thornton states the City denied Mr. Woodward's request for a variance because the carport would violate the City's zoning requirements and that the decision would have been the same on any lot of similar shape and size located in the same residential area.

■ An ADA violation will not be found where there is no evidence of discrimination in an ordinance either on its face or in its application. To illustrate, in *Forest City Daly Housing, Inc. v. Town of North Hempstead,*[10] a developer sought a special use permit to construct an assisted living facility for disabled persons in a commercial zone. In holding that denial of the permit did not violate the ADA, the court stated that a city is not required to grant a

---

**3.** *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

**4.** *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

**5.** 42 U.S.C. § 12132 (2007).

**6.** § 12131.

**7.** *MX Group, Inc. v. City of Covington,* 293 F.3d 326, 332 (6th Cir.2002) (citing *Innova-* tive Health Sys. v. City of White Plains,* 117 F.3d 37, 44–46 (2d Cir.1997)).

**8.** § 12132(2).

**9.** *Tucker v. Tennessee,* 443 F.Supp.2d 971, 973 (W.D.Tenn.2006) (quoting *Jones v. City of Monroe,* 341 F.3d 474, 477 (6th Cir.2003)).

**10.** 175 F.3d 144 (2d Cir.1999).

special use permit for housing for persons with disabilities when it would not do so for residences where persons without disabilities can live.[11]

The present case is both legally and factually similar to another case, *Robinson v. City of Friends-wood*.[12] In *Robinson*, the city denied plaintiff Robinson's request for a variance to a zoning ordinance to build a carport. Robinson was disabled due to an artificial hip, secondary limp, hypertension, and surgery for colon cancer.[13] He constructed the carport so that he would not slip and fall on the walk from his car to his home should the ground be wet.[14] The carport extended to within five feet of the front property line.[15] The city zoning ordinance, however, had a setback requirement of twenty-five feet.[16] When the city informed Robinson of the violation and ordered the carport removed, Robinson applied for and was denied a variance.[17] Robinson then sued alleging violation of the ADA.[18] In granting the city's motion for summary judgment, the court held that the ordinance at issue was neither facially discriminatory nor discriminatory in its application to Robinson.[19]

█ The instant case warrants parallel considerations with *Robinson*. Assuming that Mrs. Woodward meets the first two factors under the statute, that she has a disability and is otherwise qualified, Plaintiffs still cannot establish a prima facie case as to the third factor required to support an ADA claim-that they were discriminated against based solely upon that disability. Plaintiffs claim that by denying the variance, the City intentionally discriminated against them because of Mrs. Woodward's disability. If, as Plaintiffs claim, the denial of the variance was motivated by the City's desire to discriminate against individuals with disabilities, Plaintiffs would have a claim that they were subject to discrimination by a public entity in violation of Title II of the ADA. There is no evidence, however, that the denial of the variance was motivated by discrimination against individuals with disabilities.

In their Response to Defendant's Motion for Summary Judgment, Plaintiffs* cite *Tsombanidis v. West Haven Fire Department*[20] and *Tennessee v. Lane*.[21] In Lane, the Supreme Court noted that Title II of the ADA was enacted to remedy "unequal treatment in the administration of state services and programs."[22] In Tsombanidis, the court stated that the city could not deny a variance request solely because of the plaintiff's disability when the request-

---

11. *Id.* at 146.

12. 890 F.Supp. 616 (S.D.Tex.1995) (cited by *Howard v. Beavercreek,* 108 F.Supp.2d 866 (Ohio 2000)).

13. *Id.* at 619 n. 2.

14. *Id.*

15. *Id.* at 619.

16. *Id.*

17. *Id.*

18. *Id.* Robinson also alleged violations of the Fair Housing Act and 42 U.S.C. § 1983. *Id.*

19. *Id.* at 623.

20. 352 F.3d 565 (2d Cir.2003) (holding that a city's failure to make a reasonable accommodation by exempting a group home for recovering alcoholics and drug addicts from certain zoning regulations violated the ADA).

21. 541 U.S. 509, 124 S.Ct. 1978, 158 L.Ed.2d 820 (2004) (holding that, as applied to cases implicating the fundamental right of access to the courts, Title II of the ADA is a valid exercise of Congress's enforcement power under the Fourteenth Amendment).

22. *Id.* at 524–25, 124 S.Ct. 1978.

ed accommodation was reasonable.[23] To establish a prima facie case of discrimination under the ADA, Plaintiffs must show that the City's decision was motivated by a discriminatory purpose.[24] Here, however, the City denied the plaintiffs variance request in accordance with the zoning regulations applicable to the residential area where Plaintiffs live. Thus, the denial was not due to Mrs. Woodward's disability at all, nor were Plaintiffs treated unequally. In fact, Plaintiffs were treated the same as any other resident in the same area with a lot of similar size and shape.

Once the party moving for summary judgment has affirmatively negated an essential element of the non-moving party's claim (i.e. that Plaintiffs were discriminated against because of a disability), the burden shifts to the non-moving party to set forth specific facts that establish the existence of the disputed material fact that must be resolved by the trier of fact. Plaintiffs have alleged no facts that show that the City acted with discriminatory intent. Rather, they allege only that Mrs. Woodward has a disability which motivated Plaintiffs to seek a variance and that the City denied the requested variance. These facts alone are not enough to defeat Defendant's Motion for Summary Judgment on the ground that the City did not deny the variance solely because of Mrs. Woodward's disability.

## B. Reasonable Modification

Plaintiffs rely on *PGA Tour, Inc. v. Martin*[25] apparently in support of a reasonable modification argument. In the Martin case, the Supreme Court held that courts must make an individualized inquiry to determine whether a requested modification was reasonable and necessary for the disabled individual and whether it would fundamentally alter the nature of the activity.[26] Where a modification, such as waiver of an ordinance, would fundamentally alter the nature of the zoning scheme, however, an accommodation is not reasonable.[27]

The ADA's reasonable accommodation requirement is not intended to exempt the disabled from zoning rules that create a general inconvenience or expense.[28] Rather, the duty is confined to rules and policies that harm the disabled *"by reason of their handicap,* rather than ... what they have in common with other people."[29] According to Ms. Thornton, the purpose of the zoning regulation at issue in this case is to preserve the residential character of the neighborhood by limiting the location and types of buildings that one may put on the residential lot. Allowing Plaintiffs to build a carport in violation of the zoning requirements would be at odds with the fundamental nature of the zoning scheme,

---

23. *Tsombanidis,* 352 F.3d at 580.

24. *Turner v. City of Englewood,* 195 Fed.Appx. 346, 353 (6th Cir.2006); *Smith & Lee Assocs., Inc. v. City of Taylor, Mich.,* 102 F.3d 781, 790 (6th Cir.1996).

25. 532 U.S. 661, 683, 121 S.Ct. 1879, 149 L.Ed.2d 904 (2001) (holding that allowing a disabled golfer to use a golf cart, despite the PGA's walking requirement, was not a modification that would "fundamentally alter the nature" of the game).

26. *Id.* at n. 38

27. *Jones v. City of Monroe,* 341 F.3d 474, 480 (6th Cir.2003); *Howard v. City of Beavercreek,* 276 F.3d 802, 806 (6 th Cir.2002) (quoting *Smith & Lee Assocs., Inc. v. City of Taylor,* 102 F.3d 781, 794–95 (6th Cir.1996)).

28. *Good Shepherd Manor Found., Inc. v. City of Momence,* 323 F.3d 557, 562 (7th Cir.2003) (quoting *Hemisphere Bldg. Co. v. Village Of Richton Park,* 171 F.3d 437, 440 (7th Cir. 1999)).

29. *Id.* at 561(emphasis in original).

and therefore, unreasonable. Plaintiffs do not attach any affidavits or other sworn testimony to support their statement in their Response that "the City routinely grants variances to churches and commercial establishments." Even if there were such evidence, there is no evidence that those entities are governed by the same zoning ordinances that apply here. Furthermore, as indicated above, the Court has already found that Plaintiffs cannot make out a prima facie case for an ADA violation because the decision to deny the variance was not motivated by a discriminatory purpose. Thus, the Court's reasonable modification analysis concludes here.

### C. Compensatory Damages

██ Plaintiffs also seek compensatory damages and attorney's fees based on the City's alleged violation of the ADA. Under the ADA, compensatory damages may be recovered when the plaintiffs prove intentional discrimination.[30] As discussed above, the City denied Plaintiffs' variance request in accordance with its neutral zoning regulations. Compensatory damages, therefore, would be inappropriate.

### *CONCLUSION*

Plaintiffs have not presented sufficient proof that the City denied the request for the variance based solely on Mrs. Woodward's disability. Further, the City has shown that it treated Plaintiffs' variance request in the same manner as it would any other request of an applicant living in the same residential area with a lot of the same size and shape. Because the Defendant has demonstrated that no genuine issue of material fact exists as to an essential element of Plaintiff's claim on which the Plaintiff would bear the burden of proof at trial, the Defendant's Motion for

Summary Judgment must be and is hereby **GRANTED.**

**IT IS SO ORDERED.**

---

30. *Tucker v. City of Savannah,* 443 F.Supp.2d 971, 973 (W.D.Tenn.2006).